FILED

SEP 11 2019

U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| OMAR RODRIGUEZ-RIVERA,<br>    Petitioner, | )<br>)<br>)<br>) 3:19cv147 |
| v. | ) CR. No.: 3:04-CR-158(ccc) |
| UNITED STATES OF AMERICA,<br>    Respondent. | )<br>)<br>)<br>) |

PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO § 2241
AND INCORPORATED MEMORANDUM

Comes now the Petitioner, Omar Rodriguez-Rivera, acting in a pro se capacity and hereby respectfully Petitions the Court for a Writ of Habeas Corpus pursuant to § 2241 with incorporated memorandum, and as grounds for same states the following:

FACTUAL AND PROCEDURAL HISTORY

On April 7, 2004 Petitioner, Omar Rodriguez-Rivera was charged in a six-count indictment with conspiracy to interfere with commerce by threats or violence, and aiding and abetting in using weapons in those robberies. Count One charges Petitioner with participating in a conspiracy with two other persons not charged in this indictment, Elin Lugo Echeverria and Samuel-Santos-Oritz, and others known and unknown to the grand jury, to unlawfully obstruct, delay and affect commerce as that term is defined according to Title 18. United States Code, § 1951 (b)(3), and the movement of articiles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, § 1951(b)(1), by unlawfully taking or obtaining property consisting

of money belonging to Narbel's Cafe & Bar, in Guayama, Puerto Rico from the person of or in the presence of the possessor of said money against his will by means of actual or threatened force, violence, or fear of injury, immediate or future, to his person or the person of a relative or member of his family. All in violation of Title 18, United States Code, § 1951(a) and 2.(Crim. No. 04-0158, Docket No. 2). Count Two is the corresponding aiding and abetting charge. Count Three charges Petitioner and the same two others who are not indicted with knowingly using or carrying firearms, as the term is defined in Title 18, United States Code, § 921(a)(3), during and in relation to a crime of violence as that term is defined in Title 18, United States Code, § 924(c)(3) to wit: interference with commerce by robbery, an offence for which they may be prosecuted in a Court of the United States, as charged in Count Two, all in violation of Title 18, United States Code § 924(c)(1)(A)(ii) and 2. (Crim. No. 04-0158, Docket No. 2 at 2-3). Counts Four through Six trace similar criminal activity with the same players on a different date where the victims are "V. Suarez & Co., Inc", which had purchased beer from Coors Light Brewing Company located in Memphis, Tennessee, a Puerto Rico trucking company, "Ponce Safety Corporation", and a beer truck driver Jose Feliciano, who at the relevant time was distributing a quanity of Coor Light Beer.

    The jury trial began on July 27, 2004. (Crim. No. 04-0158, Docket No. 25). A special verdict was returned August 12, 2004.(Crim. No. 04-0158, Docket No. 39). See Blakely v. Washington, 542 U.S. 296

124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Petitioner was convicted on two counts, and was sentenced on February 17, 2005 to two consecutive terms of 240 months imprisonment. (Crim. No. 04-0158, Docket No. 57). Petitioner filed a notice of appeal on the following date. Judgment was entered by the United States Court of Appeals for the First Circuit on January 10, 2007. As a result of that judgment, the conviction and sentence of Petitioner were affirmed. <u>United States v. Rodriguez-Rivera</u>, 473 F. 3d 21 (1st Cir. 2007). No petition for a Writ of Certiorari was filed. The Petitioner on June 19, 2012 filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1). The basis of the § 2255 was various errors by his inexperienced Counsel. The argument raised therein were found to not have merit and the § 2255 was time barred. A Certificate of Appealability was denied.

The Petitioner filed a motion on December 17, 2018 pursuant to Federal Rule of Civil Procedure 60(b)(6) regarding the Court grant him relioef from the final judgment denying his motion filed under 28 U.S.C. § 2255 based on the Court's failure to grant Petitioner an evidentiary hearing. The motion was denied on February 25, 2019.

The Petitioner filed a notice of appeal and request for a Certificate of Appealability regarding the denial of the Rule 60(b)(2) motion. The matter remains pending.

The Petitioner is presently incarcerated at the Federal Correctional Institution-Hazelton, Bruceton Mills, West Virginia.

Accordingly, the Petitioner files the instant action pursuant to 28 U.S.C. § 2241.

## LEGAL STANDARDS

Generally, 28 U.S.C. § 2255 provides the exclusive means for a prisoner in federal custody to test the legality of his detention. However § 2255(e) contains a savings clause, which allows a district court to consider a habeas petition brought by a federal prisoner under § 2241 where § 2255 is "inadequate or ineffective to test the legality' of the detention. 28 U.S.C. § 2255; see also United States v. Poole, 531 F. 3d 263, 270 (4th Cir. 2008). The fact that relief under § 2255 is procedurally barred does not render the remedy inadequate or ineffective to test the legality of a prisoner's detention. In re Jones, 226 F. 3d 328, 332(4 Cir. 2000). In the Fourth Circuit, a § 2255 petition is only inadequate or ineffective to test the legality of detention when:

> (1) [A]t the time of conviction, settled law in this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provision of § 2255 because the new rule is not one of constitutional law.

Poole, 531 F. 3d at 269 (quoting **In re Jones**, 226 F. 3d at 333-34).

The fourth Circuit found that the savings clause may apply to certain sentencing challenges. It explained:

> [W]e conclude that § 2255 is inadequate and ineffective to test the legality of a sentence when: (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) sebsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral

4

review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

**United States v. Wheeler**, 886 F. 3d 415, 429 (4th Cir. 2018). Because the requirements of the savings clause are jurisdictional, a § 2241 petitioner relying on the § 2255(e) savings clause must meet either the Jones test (if challenging the legality of his conviction) or the Wheeler test (if challenging the legality of his sentence) for the court to have subject-matter jurisdiction to evalute the merits of the petitioner's claims. See Wheeler, 886 F 3d at 423-26.

## ARGUMENT

The single question presented in this action is whether the commentary in U.S.C.G. § 2A1.1(a) adding an incomplete offense can "interpret" without being "inconsistent with" the short text in same. The Supreme Court in Stinson v. United States, 508 U.S. 36, 42-43, 45 (1993) upheld the Sentencing Commission's interpretation of a clause whose very existence depended on interpretation. However, Stinson in no way supports the proposition that commentary which adds to perfectly clear guideline text is similarily binding. In short adding to the substantive scope of otherwise clear guideline text, the commentary is necessarily inconsistent with the text of the guideline--and thus invalid.

5

U.S.S.G. § 2A1.(a) provides the following in its text: "First Degree Murder" (Bolding omitted). Whereas, in U.S.S.G. § 2A1.1 CMT.(n.1) it provides in pertinent part the following: "This guideline <u>also applies</u> when death results from the commission of certain felonies." (Emphasis added).

The Commentary to U.S.S.G. § 2A1.1(a) has expanded U.S.S.G. § 2A1.1(a) to essentially include "felony murder" If the Sentencing Commission wanted to add "felony murder" to the text of U.S.S.G. § 2A1.(a) when it submitted same to Congress it could have easily have done so. But it did not.

The commentary to U.S.S.G. § 2A1.1 <u>adds to</u> perfectly clear guideline text therein. The adding to the Substantive Scope of the otherwise Clear guideline text, the Commentary is necessarily inconsistent with the text in § 2A1.1. Consequently the Commentary adding "felony murder"[1] is invalid.

The Sentencing Commission, as an administrative agency, may not exercise any power that Congress has not delegated to it. In the Sentencing Reform Act of 1984 (SRA). Congress delegated to the

---

[1] <u>See</u> Black's Law Dictionary (10th ed. 2014)(defining the felony murder rule as "if a person dies during the course of and in furtherance of a specified type of felony-even in immediate fight from the scene...the death is considered a murder regardless of intent" and explaining that" m]ost states restrict this rule to inherently dangerous felonies such as, rape, arson, robbery, and burglary"). If first degree murder was the same as felony murder the Sentencing Guideline Commission <u>would not have attempted</u> to expand the definition of first degree murder in the application notes to the commentary in 2A1.1 with the following "also applies language." "This guideline also applies when death results from the commission of certain felonies." <u>Id</u>.

Commission the authority to promulgate "guidelines" in accordance with the Administrative Procedure Act (APA)'s notice-and-comment and hearing requirements, 28 U.S.C. § 994(x), and to "submit to Congress amendments to the guidelines" for its approval, modification or rejection six months before their effective date, 28 U.S.C. § 994(p), which makes the Commission "fully accountable to Congress." Mistretta v. United States, 488 U.S. 361, 393-94 (1989). Commentary is neither to the APA's notice-and-comment and hearing requirements, nor reviewed by Congress. Indeed, as the Court recognized in Stinson, the SRA did not authorize the Commission to issue commentary at all. See Stinson, 508 U.S. at 41. Nonetheless, the Court validated the Commission's past and future issuance of commentary by analogizing the guidelines to the legislative rules of other agencies, and the commentary to an agency's interpretation of its own legislative rules. See Id. at 45. Thus, the Court held that commentary issued by the Commission is valid and authoritative only if it "interprets or explains a guideline"

---

The Sixth Circuit Court of Appeals in the recent far-reaching unanimous decision en banc in Havis v. United States, No. 17-5772, 2019 U.S. App LEXIS, 2019 WL 2376070 (6th Cir. June 6, 2019) held that the United States Sentencing Commission exceeded its authority by expanding-in an application note-the guidelines' definition of the term "controlled substance offense." Havis, 2019 U.S. App. LEXIS 17042, 2019 WL 2376070 at *3 ("The Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference. The text of § 4B1.2(b) controls, and it makes clear that attempt crimes do not qualify as controlled substance offenses.") Havis calls into question much of the commentary in the guidelines. Id.

7

and is not "inconsistent with or a plainly erroneous reading of, that guidline," and does not violate the Constitution or a federal statute. Id. at 38. Where "commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline." Id. at 43.

In short, the only valid function of commentary is to interpret or explain the text of a guideline, and commentary has no freestanding definitional power. if it were otherwise, the Commission could issue commentary changing or adding to a guideline without complying with its delegated notice-and-comment rulemaking authority, 28 U.S.C. § 994(x), and without accountability to Congress, 28 U.S.C. § 994(p). Such action would be beyond its delegated powers and therefore invalid. See City of Arlington v. FCC, 133 S. Ct. 1863, 1869 (2013)("Both [the] power of [agencies] to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, [] what they do is ultra vires."): Mission Group Kansas v. Riley, 146 F 146 F. 3d 775, 781 (10th Cir. 1998)(agency rule that is not an interpretation of its own regulation is "adopted outside of the procedures Congress has authorized the [agency] to use" and thus has no binding power).

This Circuit as well as the Seventh, and Eighth Circuits recognize that commentary has no freestanding definitional power. See United States v. Soto-Rivera, 811 F. 3d 53, 58-62 (1st Cir. 2016); United States v. Shell, 789 F. 3d 335. 345 (4th Cir. 2015); United States v. Rollins, 836 F. 3d 737, 742 (7th Cir. 2016)(en banc); United States v. Bell, 840 F. 3d 963, 967 (8th

1. Requiring judicial deference to agency commentary promulgated without accountability to Congress or judicial review raises serious constitutional problems.

In holding in <u>Stinson</u> that courts must defer to commentary that "interprets or explains a guideline," 508 U.S. 36, 38 (1993), the Supreme Court applied the doctrine orginating in <u>Bowles v. Seminole Rock & Sand Co.</u>, 325 U.S. 410, 414 (1945), which is usually called "Auer deference" today <u>Auer v. Robbins</u>, 519 U.S. 452, 461 (1997). The Seminole Rock/Auer deference adopted by Stinson has been strongly criticized over the years by members of the Supreme Court as a violation of the separation of powers.[1] In our constitutional structure, "[i]t is emphatically the province of the judicial department to say what the law is. "Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803). Yet <u>Auer</u> deference permits an agency to promulgate a regulation with force of law and also be the final judge of what the rule means, with its binding interpretation unchecked either by notice-and-comment or by judicial review. See <u>Perez v. Mortgage Banker Ass'n</u>, 135 S. Ct. 1199, 1212 (2015)(Scalia,J concurring in the judgment); <u>Id.</u> at 1217 (Thomas J., concurring in the judgment). In doing so, <u>Auer</u> deference

---

[1] See <u>United Student Aid Funds, Inc v. Bible</u>, 136 S. Ct. 1607, 1608 (2016)(Thomas, J., dissenting from the denial of certiorari): <u>Perez v. Mortage Bankers Ass'n</u> 135 S. Ct. 1199, 1210-11 (2015)(Alito, J., concurrung in part and concurring in the judgment); <u>Id.</u> at 1211-13 (Scalia, J., concurring in the judgment); <u>Id.</u> at 1213-24 (Thomas, J., concurring in the judgment); <u>Decker v. Northwest Envtl. Def. Ctr.</u>, 133 S. Ct. 1326, 1340-41 (2013)(Scalia, J., dissenting); at 1338-39 (Roberts, CJ., & Alito, J., concurring); <u>Talk America v. Michigan Bell Tel.</u>, 554 U.S. 50, 67-69 (2011) (Scalia, J., concurring).

9

"effects a transfer of the judicial power to an executive agency" and "undermines the judicial 'check' on the political branches," with resulting "accumulation of govermental power"["subject[ing] regulated parites to precisely the abuses that the Framers sought to prevent." Mortage Bankers Ass'n, 135 S. Ct. at 1213-21 (Thomas, J., concurring in the judgment). And "when an agency interprets its own rules... the power to prescribe is augmented by the power to interpret; and the incentive is to speak vaguely and broadly, so as to retain a 'flexibility' that will enable 'clarification' with retroactive effect." Decker v. Northwest Envtl. Def. Ctr., 568 U.S. 597, 620 (2013)(Scalia, J., concurring in part and dissenting in part). "Auer is a dangerous permission slip for the arrogation of power." Id.

  The flaws of Auer deference are even worse in the Guidelines' context under Stinson. First unlike ordinary Auer deference, which merely permits but does not require courts to an agency's interpretation of its own regulation,[2] courts must give "controlling weight" to the Commission's interpretive commentary so long as it is not "inconsistent with, or a plainly erroneous reading of, that guideline," and does not violate the Constitution or a federal statute. Stinson, 508 U.S. at 38

---

[2] See United Student Aid Funds, Inc., 136 S. Ct. at 1608 (Thomas J., dissenting from the denial of certiorari).

Unlike an ordinary agency's legislative rule, the Commission's guidelines are exempt from judicial review under the APA. See 28 U.S.C. § 994(x) (subjecting the Commission's guidelines only to notice-and-comment under 5 U.S.C. § 553). An ordinary agency's regulation, in contrast, is subject to judicial review by which the "reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action" and "shall [ ] hold unlawful and set aside" any regulation "found to be" inter alia, "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law";"contrary to constitutional right [or] power"; "in excess of statutory [ ] authority"; or without observance of procedure required by law." 5 U.S.C. § 706(2). The Commission may thus both promulgate a guideline unchecked by judicial review, and also interpret that unchecked guideline through building commentary that itself is unchecked by notice-and-comment, judicial review, or congressional review. See Stinson, 508 U.S. at 41. Moreover, unlike other agencies, the Commission is not subject to the APA's requirement that an agency hold "every portion of every meeting...open to public observation," 5 U.S.C. § 525b(b); that is not engage in ex parte communications regarding matters subject to a public hearing, Id. § 557(d)(1); or that it provide a statement of "basis and purpose" for its rules, Id. § 553(c), explained in light of the factors made relevent by the enabling legislation and supported by factual evidence.

## CONCLUSION

Wherefore, the Petitioner's sentence should not have been increased based on the death of the robbery victims because the commentary to § 2A1.1(a) improperly added "felony murder to the text of said guideline. His sentence should be in accordance with the base level under the guidelines elevated only by the fact, <u>as bound by the jury</u>, that the victims suffered serious or life-threatening injury. This calculation, adjusted for the Petitioner's conviction on multiple Counts in accordance with U.S.S.G. § 3 D1. 4 (2006) would result in an offense level of 28 for a guidelines range of 78-97 months.

The Petitioner declares the foregoing is true and correct pursuant to 28 U.S.C. 1746.

Respectfully Submitted,

*/s/ Omar R. Rodriguez-Rivera*
Omar Rodriguez-Rivera
Register # 24195-069
Federal Correctional
Institution-Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

## CERTIFICATE OF SERVICE

I hereby certify to mailing a true and correct copy of the foregoing by U.S.P.S. First Class mail properly addressed with sufficient postage pursuant to the "prison mailbox" rule and 28 U.S.C. § 1746 on this 9 day of September, 2019 to the following:

```
         Clerk, U.S. District Court
         217 W. King St. Room 102
           Martinsburg, WV 25401
      Attn: INMATE Litigation Clerk
```

and to:

the U.S. Attorney will be noticed by CM/ECF as the Petitioner is indigent,

Omar Rodriguez-Rivera
24195-069